UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24120

DENEEN CORNIN,

     Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY[1]

Plaintiff, DENEEN CORNIN (hereinafter "CORNIN"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

### PARTIES AND JURISDICTION

1. CORNIN seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. CORNIN is *sui juris* and is a resident and citizen of the state of Louisiana.

---

[1] When this complaint refers to a numbered paragraph, such as "paragraph 14" for example, unless otherwise stated, it is referring to the corresponding numbered paragraph of this complaint.

6.    CARNIVAL is a citizen of the state of Florida and the nation of the United Kingdom and Panama.

7.    CARNIVAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.    CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.    Operated, conducted, engaged in, or carried on a business venture; and/or

      b.    Had an office or agency; and/or

      c.    Engaged in substantial activity; and/or

      d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

10.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Glory*.

11.    CORNIN'S incident occurred on or about October 3, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, *the Glory*.

12.    On or about October 3, 2022, between approximately 11:45 AM and 12:45 PM, as CORNIN attempted to sit down on a bar stool on the lido deck in a normal and proper manner, the top of this bar stool fell off, causing her knee and leg to get stuck on the stool.

13.   As a result, CORNIN sustained severe injuries that include, but are not limited to, severe injuries to her knee, leg, possible nerve damage, and other serious injur(ies) which may require surgery.

14.   At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a.   The subject stool was unreasonably loose, which caused the top half to come loose when CORNIN attempted to sit on it, causing it to fall off, thereby causing her incident

    b.   The subject stool was not properly welded and/or not properly positioned, which caused the subject stool to come loose when CORNIN attempted to sit on it, causing it to fall off, thereby causing her incident.

    c.   The subject stool CORNIN sat on lacked adequate slip resistant material, which caused the top of the subject stool to slip off, and which caused CORNIN'S incident and injuries.

    d.   There was an unreasonable number of passengers, over ten, in the subject area, which was caused by CARNIVAL'S crewmembers' failure to control the crowd of these passengers such that an acceptable number of passengers were in the subject area. This caused CORNIN'S incident and injuries because the crowd prevented her from seeing the that the subject stool was dangerous, and therefore caused her sit on it and to suffer her incident and injuries.

    e.   Other dangerous conditions which will be revealed during discovery.

15. Each of these dangerous conditions was a sufficient cause of CORNIN'S incident and injuries, each of these conditions caused CORNIN'S incident and injuries, and CORNIN is alleging that CARNIVAL was negligent as to each of these conditions in the alternative.[2]

16. CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a. CORNIN was in the subject area for approximately at least an hour before her incident, and was able to see the area during this whole time, but did not see anyone change the position of the stool or otherwise damage or alter it. Therefore, CORNIN reasonably infer that the stool was in a loose and dangerous condition at least approximately an hour prior to her incident, such that CARNIVAL had sufficient time to become aware of this danger and to take appropriate remedial measures, but failed to do so.

b. Approximately the day before CORNIN'S incident, CORNIN saw that there was another stool in the same area that had its top part off and yellow caution tape around it to prevent passengers from sitting on it, indicating that CARNIVAL knew that these stools were prone to having their top portions becoming loose and falling off, but CARNIVAL placed no such warnings or caution tape over the subject stool at the time of the incident. After CORNIN'S incident, CARNIVAL also placed the same yellow caution tape around the subject stool in the same manner as it did for this previous stool.

---

[2] A sufficient cause means a cause that, acting alone, is sufficient to cause an effect. (https://www.verywellhealth.com/understanding-causality-necessary-and-sufficient-3133021). In this case, this means that each dangerous conditions CORNIN has alleged alone was a cause of his incident such that the only way CARNIVAL could have prevented CORNIN'S incident was to have adequately warned of or remedied each of these conditions.

c.  CARNIVAL has policies/procedures requiring its crewmembers to weld and/or to position the bar stools in a correct manner to prevent injuries resulting in personal injury, which shows that CARNIVAL knew or should have known that stools welded and/or positioned incorrectly like the subject stool was dangerous conditions.

d.  Furthermore, CORNIN observed CARNIVAL crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate vicinity, such that CORNIN reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore was or should have been aware of the dangerous and/or risk-creating conditions discussed in paragraph 14, and should have warned of and/or removed these conditions.

e.  CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the subject area with design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject area, such that CARNIVAL should have known of the design defects of the subject area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 14(a-c and e).

f.  There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 14, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a

reasonable cruise line should have done.

g.  CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in CORNIN'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to CORNIN'S incident.

h.  Previous passengers in prior cases suffered incidents involving similar dangers on CARNIVAL'S ships (including CARNIVAL's subsidiary brands, such as AIDA Cruises, Carnival Cruise Line, Costa Cruises, P&O Cruises, P&O Cruises Australia, Cunard Line, Princess Cruises, Holland America Line, and Seabourn), including, but not limited to *Hickman v. Carnival Corp.*, No. 04-20044 CIV UUB, 2005 WL 3675961, at *1 (S.D. Fla. July 11, 2005) ("While there is no question that the presence of the actual bar stool might enhance the ability to support plaintiffs' theories of liability, a case can nonetheless be made. Furthermore, if we had the bar stool, we'd be arguing about the failure to preserve the base."), *Tesoriero v. Carnival Corp.*, No. 16-21769-CIV, 2017 WL 8895347, at *1 (S.D. Fla. Sept. 22, 2017), report and recommendation adopted, No. 16-CV-21769, 2018 WL 1894717 (S.D. Fla. Mar. 23, 2018), aff'd but criticized, 965 F.3d 1170 (11th Cir. 2020) ("Plaintiff claims that when she sat down on the chair, it suddenly collapsed, causing personal injuries, including an injury to her right arm. . . . other patrons had used the stools[.]), *Altidor v. Carnival Corp.*, 550 F. Supp. 3d 1322, 1327 (S.D. Fla. 2021) ("During the fall, 'the top part [of the barstool] just flew off.'"), *Schachter v. Cunard Line Ltd. Co*., No. 09-23188-CV, 2009 WL 10668975, at *1 (S.D. Fla. Dec. 31, 2009) ("Plaintiff claims that on or about October 8, 2007, he tripped and fell over a plastic step stool negligently left on the

floor of the beauty salon and spa aboard Defendant's vessel, the Queen Mary II.").

    i.   Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

17.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

18.   The subject area and the vicinity lacked adequate safety features to prevent or minimize CORNIN'S incident and/or injuries.

19.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

20.   These hazardous conditions existed for a sufficient period of time before the incident that CARNIVAL knew or should have been aware of them.

21.   At all times relevant, CARNIVAL failed to adequately inspect the conditions discussed in paragraph 14, as well as the subject area and the vicinity, for dangers. For example, CARNIVAL was required, by its own policies and procedures, to inspect the subject area in certain intervals of time (such as, for example, every fifteen minutes), to ensure that the subject stool was not unreasonably loose. However, CARNIVAL failed to inspect the subject area during the intervals its own policies and procedures required, thereby causing it to be unable to address the unreasonable looseness of the subject stool prior to CORNIN'S incident.

22.   At all times relevant, CARNIVAL failed to maintain the conditions discussed in paragraph 14(a-c and e) in a reasonably safe condition. For example, CARNIVAL failed to perform regular upkeep on the subject area, including, but not limited to, by failing to apply and to regularly apply slip resistant material to the subject stool to prevent it from becoming unreasonably loose.

23.     At all times relevant, CARNIVAL had the ability to remedy the dangerous conditions, but failed to do so. For example, CARNIVAL could have welded and/or positioned the subject stool in a manner where it would not have caused loose, but CARNIVAL failed to do so. The dangerous conditions that CARNIVAL needed to remedy are those discussed in paragraph 14.

24.     These conditions were neither open nor obvious to reasonable passengers, including CORNIN, and CARNIVAL failed to adequately warn CORNIN of the dangers. CARNIVAL failed to provide reasonable warnings such as, for example, a warning sign in the subject area that was not in a location CORNIN could not see. The dangerous conditions that CARNIVAL needed to warn CORNIN of are those discussed in paragraph 14.

25.     At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area involved in CORNIN'S incident.

26.     At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the flooring involved in CORNIN'S incident.

27.     The crewmembers of *the Glory* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

28.     CARNIVAL'S crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

29.     CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

30.     The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

31.   The crewmembers were represented to CORNIN and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. CORNIN detrimentally relied on these representations as CORNIN would not have proceeded on the subject cruise had CORNIN believed the crewmembers were not employees of CARNIVAL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

32.   CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-21 as if set forth herein.

33.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

34.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the conditions discussed in paragraph 14, as well as the subject area and the vicinity, for dangers.

35.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to CORNIN and were negligent by failing to adequately inspect the conditions discussed in paragraph 14, as well as the subject area and the vicinity, for dangers, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 14 were present at the time of CORNIN'S incident.

36.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in

paragraph 18.

37.     These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the conditions discussed in paragraph 14, as well as the subject area and the vicinity.

38.     CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

39.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

40.     CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

41.     As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

42.     The losses are permanent and/or continuing in nature.

43.     CORNIN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

44.    CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-20 and 22 as if set forth herein.

45.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

46.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the conditions discussed in paragraph 14(a-c and e).

47.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to CORNIN and were negligent by failing to adequately maintain the conditions discussed in paragraph 14(a-c and e), such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 14(a-c and e) were present at the time of CORNIN'S incident.

48.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

49.    Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the conditions discussed in paragraph 14(a-c and e).

50.    CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

51.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

52.    CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

53.    As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

54.    The losses are permanent and/or continuing in nature.

55.    CORNIN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just

or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO REMEDY**

56.    CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-20 and 23 as if set forth herein.

57.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

58.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous conditions discussed in paragraph 14.

59.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to CORNIN and were negligent by failing to adequately remedy the dangerous conditions discussed in paragraph 14.

60.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

61.    Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the dangerous conditions discussed in paragraph 14.

62.    CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

63.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 13 of 22**

64.     CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

65.     As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

66.     The losses are permanent and/or continuing in nature.

67.     CORNIN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

68.     CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-20 and 24 as if set forth herein.

69.     At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including CORNIN.

70. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to CORNIN.

71. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to CORNIN and was negligent by failing to warn CORNIN of the dangerous conditions discussed in paragraph 14.

73. Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

74. These dangerous conditions were also created by CARNIVAL.

75. CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn CORNIN despite knowing of the dangers.

76. These dangerous conditions existed for a period of time before the incident.

77. These conditions were neither open nor obvious to CORNIN.

78. CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

79. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.   CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.   As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   CORNIN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

84.   CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-20 and 25-26 as if set forth herein.

85.   CARNIVAL negligently designed, as well as negligently approved of the design, of

the dangerous conditions discussed in paragraph 14(a-c and e).

86.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to CORNIN, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 14(a-c and e), as well as to design and install reasonable safeguards.

87.   At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which CORNIN was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

88.   At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of *the Glory*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to CORNIN, to design, install and/or approve of the conditions discussed in paragraph 14(a-c and e) without the deficiencies discussed in paragraph 14(a-c and e).

89.   At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in CORNIN'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

90.   CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

91.   CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Glory*, during the new build

process.

92.   CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

93.   CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

94.   However, CARNIVAL permitted the dangerous conditions discussed in paragraph 14(a-c and e) to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

95.   Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

96.   The design flaws that made the subject area and the vicinity involved in CORNIN'S incident unreasonably dangerous were the direct and proximate cause of CORNIN'S injuries.

97.   CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in CORNIN'S incident, which it knew or should have known of.

98.   CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

99.   CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

100.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

101. CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

102. As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

103. The losses are permanent and/or continuing in nature.

104. CORNIN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
### NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

105. CORNIN hereby adopts and re-alleges each and every allegation in paragraphs 1-20 and 27-31 as if set forth herein.

17. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the

safety of its passengers.

18.    The crewmembers who were in the immediate vicinity of the incident and who should have warned CORNIN of the dangerous conditions discussed in paragraph 14 and controlled the crowd, were agents of CARNIVAL for the following reasons:

a.    They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.    These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.    These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.    CARNIVAL acknowledged that this staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

19.    CARNIVAL is vicariously liable for the negligent acts of these staff, employees, and/or agents in failing to warn CORNIN of the dangerous conditions discussed in paragraph 14 and failing to control the crowd.

20.    CARNIVAL'S breach was the cause in-fact of CORNIN'S great bodily harm in that, but for CARNIVAL'S breach CORNIN'S injuries would not have occurred.

21.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

22.    CARNIVAL'S breach proximately caused CORNIN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

23.    As a result of CARNIVAL'S negligence, CORNIN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CORNIN'S vacation, cruise, and transportation costs.

24.    The losses are permanent and/or continuing in nature.

25.    CORNIN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DENEEN CORNIN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that CORNIN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, DENEEN CORNIN, demands trial by jury on all issues so triable.

**Dated:** December 20, 2022.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**

mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for CORNIN***